# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWRENCE W. STORCH, | ) |
| Plaintiff, | ) Civil Action No. 2:12-cv-629 |
| v. | ) Chief Magistrate Judge Lenihan |
| MONROEVILLE POLICE DEPARTMENT, CHIEF DOUGLAS COLE and OFFICER EDWARD LEWKOWICZ, | ) ECF No. 23 |
| Defendants. | ) |

## MEMORANDUM OPINION

Presently before the Court is the Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed by Defendants Monroeville Police Department, Chief Douglas Cole, and Officer Edward Lewkowicz. For the reasons that follow, Defendants' Motion at ECF No. 23 will be granted.

<u>Relevant Factual Allegations</u>

Plaintiff, Lawrence W. Storch ("Storch" or "Plaintiff"), is a former Monroeville police officer. Plaintiff files the above captioned action against his former employer, the Monroeville Police Department ("MPD"), the Monroeville Chief of Police Kenneth D. Cole ("Cole"), and Monroeville Police Sergeant Edward Lewkowicz ("Lewkowicz") (collectively "Defendants"). (Complaint, ECF No. 1 at ¶¶ 1-4.) Plaintiff avers that these Defendants violated his federal constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff also alleges state law tort claims.

Plaintiff had been a Monroeville police officer since 1993. (ECF No. 1 at ¶ 7.) In 2009, he and his wife filed for divorce and the divorce was still pending at the time of the filing of the

Complaint at ECF No. 1. (ECF No. 1 at ¶ 8.) Plaintiff and his wife entered into a consent order, dated September 17, 2009, wherein the wife was granted exclusive possession of the marital residence ("residence"); Plaintiff was to receive prior consent before entering the residence. (ECF No. 1 at ¶ 9.) By court order dated July 7, 2009, Plaintiff was awarded partial custody over his children with his wife. (ECF No. 1 at ¶ 10.)

In April 2010, Plaintiff met his wife at the residence for purposes of timely completing their income tax returns. (ECF No. 1 at ¶ 11.) Plaintiff avers that while at the residence for this purpose, his wife became upset and abusive and called 9-1-1. (ECF No. 1 at ¶ 12.) Lt. Larry Lyons ("Lyons") and Defendant Lewkowicz arrived, and Lewkowicz and Plaintiff argued over Plaintiff's right to be on the property. (ECF No. 1 at ¶¶ 13, 15.) Plaintiff represented that he had the right to come to the property and request entrance, and claimed that he violated no court order in doing so. (ECF No. 1 at ¶ 14.) "Lyons pulled out a Taser and made [Plaintiff] leave." (ECF No. 1 at ¶ 16.) Plaintiff avers that Defendant "Chief Cole was advised and agreed with the removal of Plaintiff from the premises." (ECF No. 1 at ¶ 17.)

In May 2010, Plaintiff returned his child to the residence from an orthodontist appointment; Plaintiff's possession and transportation of his child were consistent with the order of court. (ECF No. 1 at ¶ 18.) Plaintiff avers that his wife became upset, struck "Plaintiff multiple times, and shut the door on Plaintiff's face." (ECF No. 1 at ¶ 19.) Plaintiff's wife called 9-1-1 and Defendant Lewkowicz and Lyons arrived at the residence again. (ECF No. 1 at ¶ 20.) The wife told the officers that the altercation was an accident, and the officers asked Plaintiff if he wanted his wife arrested; the Plaintiff responded that he did not. (ECF No. 1 at ¶¶ 21-22.) Plaintiff avers, however, that he was taken into custody and transported to the MPD to "answer to [Defendant Chief Cole]." (ECF No. 1 at ¶ 23.) Defendant Cole stated that Plaintiff

violated a court order by being on the premises and Plaintiff disagreed "as a civilian." (ECF No. 1 at ¶ 24.) Plaintiff avers that Cole became upset with him as he explained to Cole what had happened and why he believed he had the right to be on the premises. That is, Plaintiff explained to Cole "that there was no court order keeping him off the property, only inside the house without [his wife's] prior consent." (ECF No. 1 at ¶¶ 25-26.) Plaintiff avers that "Cole got mad at Plaintiff and told Plaintiff that he violated a court order and he was 'going to jail tonight.'" (ECF No. 1 at ¶ 27.)

Plaintiff alleges that Cole locked Plaintiff in the interrogation room for several hours against his will and that he [Plaintiff] cooperated. (ECF No. 1 at ¶¶ 29-30.) Plaintiff avers that Defendant Lewkowicz and a police detective transported him to night court where Plaintiff was charged with indirect criminal contempt for violating a PFA order "that did not exist." (ECF No. 1 at ¶ 31.) Plaintiff avers that the local media met Plaintiff as he left night court and published his arrest and prosecution. (ECF No. 1 at ¶ 32.)

On May 19, 2010, Judge David Wecht[1] dismissed the charges of contempt against Plaintiff and "commented that there were civil rights violations." (ECF No. 1 at ¶ 33.) At this time, according to Plaintiff, Defendants Cole and Lewkowicz realized their mistake and filed additional charges against Plaintiff for simple assault. (ECF No. 1 at ¶ 34.)

Although Plaintiff avers that the charges of contempt were dismissed on May 19, 2010, and that Cole and Lewkowicz concurrently filed additional charges, Plaintiff next avers that Lewkowicz telephoned Plaintiff on May 13, 2010 and Plaintiff surrendered to the magistrate on May 14, 2010 for processing for the simple assault charge. (ECF No. 1 at ¶¶ 33-35.) Plaintiff avers that the media was summoned and arrived to publish the arraignment. (ECF No. 1 at ¶ 36.)

---

[1] In his Response to Defendants' Motion for Judgment on the Pleadings at ECF No. 25, Plaintiff identifies the judge involved in these proceedings as Judge Wettick. (ECF No. 25 at 3, 4, 5.)

Plaintiff next avers that over the course of several preliminary hearings, the charges were amended and new charges were added. Plaintiff states that the list of serious charges was withdrawn, and Plaintiff agreed to plead no contest to a summary harassment charge[2], pay a fine and restitution, and complete domestic abuse counseling. Plaintiff notes that the media was not present and did not publish the resolution of the allegations. (ECF No. 1 at ¶¶ 37-39.) Plaintiff alleges he completed the counseling in November 2010. (ECF No. 1 at ¶ 40.)

Plaintiff states that as a result of the arrest and attendant charges, he was notified by mail that he was terminated from his employment for conduct unbecoming of an officer on or about May 25, 2010. (ECF No. 1 at ¶ 41.) He was provided an arbitration hearing on January 4, 2011, and avers that the hearing was brief, prejudicial, and did not result in his being reinstated. He also notes that Defendants Cole and Lewkowicz testified against him.

Finally, Plaintiff includes averments unrelated to the above factual scenario concerning former MPD Chief George Polnar ("Polnar"), for whom Defendant Cole was assistant chief. Plaintiff alleges that he had disputes with Polnar and with Defendant Cole when Cole was Polnar's assistant chief. Plaintiff avers that Cole removed Plaintiff from the overtime list for a detail and Plaintiff filed a grievance. Plaintiff alleges that Cole stated to the union representative that Plaintiff "is making a mistake pursuing his grievance," which Plaintiff interprets as a threat of retaliation. Plaintiff also notes a 1999 incident where Defendant Cole and Polnar solicited a frivolous citizen complaint against Plaintiff that was dropped. Plaintiff finally avers that in 2005, Polnar suspended Plaintiff for fifteen (15) days for allegedly leaving the Borough while on duty

---

[2] A "person commits the [summary offense] crime of harassment when, with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same; (2) follows the other person in or about a public place or places; or (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate person." 18 Pa. Cons. Stat. Ann. § 2709(a) and (c).

while Plaintiff was looking after a witness in a criminal investigation connected with his accuser. (ECF No. 1 at ¶¶ 45-51.)

Plaintiff attempts to aver the following claims arising out of the above facts:

1) Municipal liability claims against the MPD asserting that the MPD has a custom or policy of not acting on and/or enforcing civil court orders unless they are a PFA order that specifically instructs officers to act;

2) Municipal liability claims against MPD asserting that it has a custom or policy of not disciplining and or instructing its officers on how to handle a domestic call;

3) Fourth Amendment claims against individual Defendants Cole and Lewkowicz for false arrest, false imprisonment and malicious prosecution;

4) First Amendment retaliation claims against all Defendants for retaliating against Plaintiff for his citizen complaints and speech. Specifically, Plaintiff avers that all Defendants knew there was no statutory authority to make an arrest or charge, but did so out of retaliation.

5) Fourteenth Amendment due process violation for being denied the rights and privileges of his negotiated court order and prosecuted for a PFA violation when no PFA order existed;

6) Fourteenth Amendment substantive due process violation where Defendants shockingly, willfully and maliciously incarcerated, charged and overcharged him; and

7) State law claims for false arrest, false imprisonment, and malicious prosecution.

Legal Standard

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) based on the theory that a plaintiff has failed to state a claim invokes the same analysis as that applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Caprio v. Healthcare Revenue Recovery Grp., LLC,* 709 F.3d 142, 146-47 (3d Cir. 2013) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

In *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, In light of *Iqbal*, the United States Court of Appeals for the Third Circuit in *Fowler* set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler*, 578 F.3d at 210-11. Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id*. at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id*. (citing *Phillips*, 515 F.3d at 234-35).

Analysis

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

7

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

   1. False arrest/false imprisonment

Defendants argue that Plaintiff's § 1983 false arrest and false imprisonment claims are barred by his summary harassment conviction. Plaintiff responds that he was initially seized and arrested as a result of an alleged contempt of a PFA order that did not exist, and that the dismissal of the contempt charge is evidence that the arrest was without probable cause.

The Fourth Amendment's prohibition against unreasonable seizures protects individuals from arrest without probable cause. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The law of the state where the arrest occurred controls whether the arrest is valid. *Myers*, 308 F.3d at 255 (citing *Ker v. California*, 374 U.S. 23, 37 (1963)). In determining whether probable cause exists to support an arrest, the analysis must be based upon the totality of circumstances including "the objective facts available to the officers at the time of the arrest." *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d

Cir. 1997) (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)). Subjective intentions of police officers are irrelevant to a Fourth Amendment probable cause analysis. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Similarly, to state a claim for false imprisonment, a plaintiff must establish that he was detained, and that the detention was unlawful. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012). That is, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).

Here, although Plaintiff submits that the contempt charge was dismissed, Plaintiff ignores the fact that he pled nolo contendere to a summary harassment charge. (ECF No. 1 at ¶ 38.) A nolo contendere plea "has the same legal consequences as a plea of guilty and results in a conviction." *United States v. Adedoyin*, 369 F.3d 337, 344 (3d Cir. 2004) (citing *Brewer v. City of Napa*, 210 F.3d 1093, 1096 (9th Cir. 2000); *Myers v. Sec'y of HHS*, 893 F.2d 840, 844 (6th Cir. 1990); *United States v. Williams*, 642 F.2d 136, 138 (5th Cir. 1981)). Moreover, conviction establishes as a matter of law that the arrest was supported by probable cause. *Shelley v. Wilson*, 339 F. App'x 136, 139 (3d Cir. 2009) (citing *McClam v. Barry*, 697 F.2d 366, 370 (D.C. Cir. 1983), *overruled on other grounds, Brown v. U.S.*, 742 F.2d 1498 (D.C. Cir. 1984) ("stating that as to common law and constitutional law false arrest claims, 'subsequent conviction establishes as a matter of law that the arrest was justified.'")). And "when an arrest is made on more than one charge, '[p]robable cause need only exist as to any offense that could be charged under the circumstances.'" *Shelley*, 339 F. App'x at 139 n.4 (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)). Hence, Plaintiff cannot succeed on his claims of false arrest and

false imprisonment.³ Therefore, Defendants' Motion for Judgment on the Pleadings as it relates to these claims will be granted.⁴ Any attempt by Plaintiff to amend his Complaint as to these claims would be futile as a matter of law. ⁵

2. Malicious prosecution

Defendants next argue that Plaintiff's § 1983 malicious prosecution claim fails as a matter of law for several reasons: 1) Plaintiff has failed to alleged that he was arrested pursuant to a warrant or that he was subject to a seizure pursuant to legal process; and 2) Plaintiff's nolo contendere plea bars his claim for malicious prosecution because he cannot show that the proceedings against him were initiated without probable cause, and he is unable to show that the proceedings ended in his favor. Plaintiff responds that he was maliciously prosecuted for violating a PFA that did not exist, that he suffered a deprivation of liberty, and that the contempt proceedings ended in his favor. (ECF No. 25 at 3-4.)

In order to establish a Fourth Amendment malicious prosecution claim pursuant to § 1983, a plaintiff must show the following: 1) the defendant initiated a criminal proceeding; 2) the criminal proceeding ended in the plaintiff's favor; 3) the proceeding was initiated without

---

³ A claim for false arrest made under Pennsylvania state law is coextensive with one made under § 1983. *Kokinda v. Breiner*, 557 F. Spp.2d 581, 593 (M.D. Pa. 2008). Because Plaintiff's § 1983 claim for unlawful arrest fails due to a finding of probable cause for arrest on at least one of the offenses for which he was charged, Plaintiff's state law claim for false arrest must fail as well. *See, e.g., Kokinda*, 557 F. Supp.2d at 592-94 (holding a warrantless arrest for a summary offense based upon probable cause precluded federal and state claims for false arrest and false imprisonment).

⁴ Plaintiff's false arrest and false imprisonment claims are also barred by the *Heck* doctrine because a finding for Plaintiff on his § 1983 false arrest and false imprisonment claims would undermine the state court summary harassment conviction which establishes as a matter of law that the arrest was supported by probable cause. *See Heck v. Humphrey*, 512 U.S. 477 (1994), *discussed in, Turosik v. Hougue*, Civil Case No. 08-1248, 2011 WL 1044648, at *8-9 (W.D. Pa. March 18, 2011).

⁵ The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

probable cause; 4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).[6]

As noted above, Plaintiff's summary harassment conviction establishes that the proceedings against him were initiated with probable cause. *Shelley*, 339 F. App'x at 139. Hence, Plaintiff cannot establish the third element of a prima facie claim for malicious prosecution. Further, the conduct which the summary harassment charge aimed to punish, is the same conduct which provided the basis for the indirect criminal contempt charge that was dismissed. That is, Plaintiff admitted that he acted with the intent to "harass, annoy, or alarm" his wife, *see* 18 Pa. C.S. Ann. § 2709(a), the same conduct that supported the indirect criminal contempt charge. Therefore, Plaintiff cannot establish that the proceedings ended in his favor as required by the second element of a prima facie case for malicious prosecution. *Kossler v. Crisanti*, 564 F.3d 181, 188-89 (3d Cir. 2009). Therefore, Defendants' Motion for Judgment on the Pleadings as it relates to Plaintiff's malicious prosecution claim will be granted.[7] Any attempt by Plaintiff to amend his Complaint as to the malicious prosecution claim would be futile as a matter of law.

---

[6] The elements of a state law claim for malicious prosecution are the same but for the fifth element, which is not required to make out a claim for malicious prosecution under Pennsylvania state law. *Kossler v. Crisanti*, 564 F.3d 181, 186 n.2 (3d Cir. 2009) (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000)).

[7] As discussed at *supra* note 3, Plaintiff's malicious prosecution claim is also barred by the *Heck* doctrine because a favorable judgment on this § 1983 claim would undermine the state court summary harassment conviction which establishes as a matter of law that Plaintiff's arrest was supported by probable cause. *See Heck v. Humphrey*, 512 U.S. 477 (1994).

3. First Amendment Retaliation

Defendants advance two arguments in support of their Motion for Judgment on the Pleadings as it relates to Plaintiff's First Amendment Retaliation claim. First, Defendants argue that because Plaintiff is a public employee, his speech is not protected because he did not speak on a matter of public concern. Alternatively, Defendants argue that Plaintiff's conviction on the summary harassment charge via his plea of nolo contendere, bars his First Amendment retaliation claim pursuant to the *Heck* doctrine. As to Defendants' first argument, Plaintiff responds that he was speaking as a private citizen when he explained "why he believed he had a right to be on the premises" (ECF No. 1 at ¶ 25; ECF No. 25 at 4-5), not as a public employee, and therefore, whether he spoke on a matter of public concern is irrelevant. (ECF No. 25 at 5.) As to Defendants' second argument, Plaintiff responds that the contempt charge was dismissed, and therefore, there was no probable cause to support his arrest that allegedly occurred as a consequence of retaliation for his protected speech. (ECF No. 25 at 5.)

"Retaliation for the exercise of constitutionally-protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). In order to state a claim for First Amendment retaliation pursuant to § 1983, a plaintiff must allege that 1) he was engaged in constitutionally protected speech; 2) that the government responded with retaliation; and 3) that the protected speech caused the retaliation. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).

Defendant's first argument requires the Court to determine whether Plaintiff has averred enough facts to plausibly suggest that he was engaged in constitutionally protected speech, the first element of the prima facie case for First Amendment retaliation. *Eichenlaub*, 385 F.3d at

282. Defendants contend that because Plaintiff was a public employee and his speech did not involve a matter of public concern, his speech is not protected, and as a consequence, he is unable to state a claim for First Amendment retaliation as a matter of law. Defendants' argument is based on the theory that the State, as an employer, has an interest in regulating the speech of its employees in order to ensure the efficiency of the public services it provides. *Pickering v. Bd. of Ed.,* 391 U.S. 563, 568 (1968). To this end, it can impose restrictions on its employees that would be unconstitutional if applied to the public at large. *Id.* Public employees, however, do not relinquish all of the First Amendment rights they would enjoy as citizens as a condition of their employment. *Id.* The objective is to arrive at a balance between the conflicting interests of the State, as an employer, and of the employee, as a citizen. *Id.*

In *Hill v. Borough of Kutztown*, the United States Court of Appeals for the Third Circuit stated the following as to whether a public employee's statement is protected activity: "(1) the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement." 455 F.3d 225, 241-42 (3d Cir. 2006). The *Hill* Court also indicated that in determining whether an employee's speech addresses a matter of public concern, a court must look to the "content, form, and context of a given statement, as revealed by the whole record." *Id.* at 242. Consequently, the court of appeals concluded that it could not decide the public concern issue on a motion to dismiss. *Id.* This Court must reach the same conclusion with regard to Plaintiff's statement here. Taking all of Plaintiff's allegations as true and affording him every favorable inference, the Court is unable to determine at the motion to dismiss stage whether Plaintiff has plausibly averred that he was speaking on a matter of public concern "as revealed by the whole record." *See Hill*, 455 F.3d at

242. Hence, the Court will not grant Defendants' Motion for Judgment on the Pleadings as it relates to Plaintiff's First Amendment Retaliation claim on the basis of their first argument.

Defendants' second argument, however, requires dismissal. The United States Supreme Court has held that a § 1983 claim cannot be based on events leading to a conviction, which has not been reversed or impaired, when a favorable judgment for the plaintiff in a civil case would imply that the conviction was invalid. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Therefore, such a § 1983 claim will not be barred by *Heck* only if (1) the conviction has been reversed, expunged, or otherwise declared invalid; or (2) Plaintiff's action will not demonstrate the invalidity of the criminal judgment. *Id*. Specifically, when the basis of a First Amendment retaliation claim is in the form of an arrest and prosecution, the Plaintiff must show the absence of probable cause supporting the underlying criminal charges. *Hartman v. Moore*, 547 U.S. 250, 265-266 (2006).

Here, Plaintiff alleges that he was arrested and charged in retaliation for his speech. (ECF No. 1 at ¶¶ 55, 56, 57.) That is, Plaintiff alleges that the charges against him had no merit, but were merely intended to punish Plaintiff for complaining and insisting on his rights. (ECF No. 1 at ¶ 57.) Plaintiff, however, pled nolo contendere to a summary harassment charge. (ECF No. 1 at ¶ 38.) As discussed above, *supra* at p. 9, a nolo contendere plea "has the same legal consequences as a plea of guilty and results in a conviction." *United States v. Adedoyin*, 369 F.3d at 344. *See also Hudson v. United States*, 272 U.S. 451, 455 (1926) (The plea of nolo contendere "is an admission of guilt for the purposes of the case."). Further, conviction establishes as a matter of law that the arrest was supported by probable cause. *Shelley*, 339 F. App'x at 139. Therefore, Plaintiff cannot show the absence of probable cause for his arrest as required by *Hartman*. In addition, in proving his retaliation claim, Plaintiff would be attacking

the validity of his nolo contendere plea on the summary harassment charge, as he would be declaring his innocence of the charge by contending it was not supported by probable cause, but filed out of retaliatory animus. This sort of attack is barred by the *Heck* doctrine. Defendants' Motion for Judgment on the Pleadings as to Plaintiff's First Amendment retaliation claim will be granted. Any attempt to amend would be futile as a matter of law.

    4. Fourteenth Amendment substantive and procedural due process claims

Plaintiff's 68-paragraph Complaint contains only three references to substantive and procedural due process at ¶¶ 5, 58 and 59. As to his substantive due process claim, the Court must dismiss this claim where the "government behavior is governed by a specific constitutional amendment . . . ." *Berg v. County of Allegheny*, 219 F.3d 261, 268-69 (3d Cir. 2000). Here, Plaintiff alleges that he "was shockingly, willfully and maliciously,[sic] incarcerated, charge[sic], and overcharged in violation of the Fourteenth Amendment." (ECF No. 1 at ¶ 59.) Plaintiff's claims are more appropriately brought under the Fourth Amendment. Consequently, Defendants' Motion for Judgment on the Pleadings as it relates to Plaintiff's substantive due process claim will be granted. Any attempt to amend would be futile as a matter of law.

With regard to Plaintiff's attempt to make out a procedural due process claim, Plaintiff alleges that he "was denied due process,[sic] he was deprived the rights and privileges of his negotiated court order and was prosecuted for a PFA violation when no PFA order existed in violation of the Fourteenth Amendment." (ECF No. 1 at ¶ 58.)

To state a claim for deprivation of procedural due process pursuant to § 1983, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures

15

available to him did not provide 'due process of law.'" *Hill*, 455 F.3d at 234 (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Here, Plaintiff argues that "[t]he heart of his [procedural due process] claim again, is that he was imprisoned and prosecuted for a contempt of a PFA that did not exist. There was no probable cause to support the arrest and imprisonment and initial prosecution." (ECF No. 25 at 5.) Clearly, the gravamen of Plaintiff's procedural due process claim is premised upon his alleged Fourth Amendment violations relating to false arrest, false imprisonment and malicious prosecution. Consequently, the Court will dismiss Plaintiff's procedural due process claim along with his substantive due process claim. *See Zabresky v. Von Schmeling*, Civil Action No. 3:12-0020, 2013 WL 315718, at *6 (M.D. Pa. Jan. 28, 2013); *Wilson v. City of Cherry Hill*, Civil No. 10-3866, 2011 WL 3651274, at *8 n.12 (D.N.J. 2011); *Swedron v. Borough*, No. 08-1095, 2008 WL 5051399, at *6 (W.D. Pa. Nov. 21, 2008) (courts dismiss both substantive and procedural due process claims when plaintiff's allegations are clearly premised on First and Fourth Amendment violations).

5. State law claims for false arrest, false imprisonment, and malicious prosecution.

As indicated at *supra* notes 2 and 5, because Plaintiff's federal claims for false arrest, false imprisonment, and malicious prosecution fail as a matter of law, Plaintiff's analogous state law claims must likewise fail. Consequently, Defendants' Motion for Judgment on the Pleadings as it relates to Plaintiff's state law claims will be granted.

Conclusion

For the above reasons, Defendants' Motion for Judgment on the Pleadings at ECF No. 23 will be granted.  An appropriate order will follow.

By the Court:

s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
Chief United States Magistrate Judge

Dated:  July 29, 2013

cc:  All counsel of record
     Via electronic filing